Edward Fabio HERRERA, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00178–CR.

Court of Appeals of Texas, Texarkana.

Submitted May 31, 2002.

Decided June 25, 2002.

Opinion Overruling Rehearing July 17, 2002.

286

Abby Keenan, Houston, for appellant.

Eric E. Kugler, Assistant District Attorney, William J. Delmore III, Harris County Assistant District Attorney, Houston, for appellee.

Before GRANT, ROSS, and CORNELIUS,* JJ.

_____

* William J. Cornelius, C.J., Retired, Sitting by Assignment

## OPINION

Opinion by Justice ROSS.

Edward Fabio Herrera appeals his jury conviction and assessment of twenty years' imprisonment and a fine of $250,000.00 for possession of a controlled substance with intent to deliver. Herrera contends the trial court erred by abusing its discretion in denying his motion to suppress evidence.

We review the denial of a motion to suppress by giving almost total deference to a trial court's determination of historical facts, and we review de novo the court's application of the law. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim. App.2000). When the trial court does not make explicit findings of historical fact, we review the evidence in the light most favorable to the trial court's ruling. *Id.* at 327–28. In determining whether a trial court's decision is supported by the record, we generally consider only evidence adduced at the suppression hearing, because the ruling was based on that evidence, rather than evidence introduced later at trial. *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App.1996).

Houston police officers stopped Herrera for a traffic violation. While Herrera was stopped, the officers obtained written permission from him to search his vehicle and his apartment. The police found cocaine in Herrera's apartment. There is no dispute the traffic stop was a pretext for furthering a narcotics investigation. Officer Dale Crawford was in an unmarked car, and while maintaining surveillance on Herrera, notified Officers O.X. Pena and Fernando Villasana that Herrera was leaving a nightclub. Pena and Villasana requested Crawford stop Herrera for a traffic violation if possible, and if not, to follow him to the apartment. Crawford observed

Herrera commit a traffic violation (failure to maintain a single lane) and called Officer Bryan Garrison, who was in a marked patrol unit, to stop Herrera's vehicle. Garrison testified he did not witness any traffic violations by Herrera, but stopped Herrera solely at Crawford's request. On stopping Herrera, Garrison ascertained that he did not speak the English language. Garrison therefore called for a Spanish-speaking officer to come to the scene. Herrera gave Garrison his valid Texas driver's license. Garrison ran a background check on the license number, which returned with no outstanding warrants for Herrera's arrest. Garrison first testified he could not remember if the background check came back before the Spanish-speaking officers arrived, but then testified he had completed the check when the officers arrived. Garrison testified he could not have written Herrera a citation because he did not witness the infraction. Crawford testified he arrived at the scene shortly after Garrison stopped Herrera, but he never gave Herrera a citation, and he had little interaction with Garrison. Crawford further testified that Garrison told him Herrera did not speak the English language, and that he, Crawford, then radioed Pena and Villasana, who said they were on their way.

Villasana testified that, on his arrival at the scene, he immediately introduced himself to Herrera as a narcotics officer and told him they were investigating narcotics, and that he wanted his (Herrera's) consent to search his car and apartment. Villasana further testified he did not talk with Herrera about any other law enforcement problems; he only wanted to get the consent to search. The State produced no evidence at the hearing that the Spanish-speaking officers helped further the investigation of the initial stop in any way. The evidence conclusively proves the sole purpose for Villasana's presence at the scene was to obtain written consent to search Herrera's vehicle and apartment.

■ Herrera does not contest the validity of the traffic stop. Rather, he challenges the duration of the stop. He contends the duration of the stop exceeded the time required for the stop, and because the written consent was granted beyond the time necessary for the stop for the traffic violation, his due process rights were violated. The question is whether the written consent was granted during the detention for the traffic stop, or if it occurred outside this time.

■ A routine traffic stop is a detention and thus must be reasonable under the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim.App.1997). Two factors determine the reasonableness of an investigative detention: 1) whether the officer's action was justified at its inception; and 2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *Terry v. Ohio*, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Davis*, 947 S.W.2d at 242. To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Davis*, 947 S.W.2d at 245. However, once the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity. *Davis*, 947 S.W.2d at 243; *see. Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (Ginsburg, J., concurring). The investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Davis*, 947 S.W.2d at 245, *citing Perez v. State*, 818 S.W.2d 512, 517 (Tex.App.—

Houston [1st Dist.] 1991, no pet.). If the detention becomes prolonged, it can no longer be considered an investigative stop; but there is no rigid time limitation on the permissible length of an investigative stop. The propriety of the stop's duration is judged by assessing whether the police diligently pursued a means of investigation that was likely to quickly dispel or confirm their suspicions. *United States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Any continued detention must be based on articulable facts which, taken together with rational inferences from those facts, would warrant a person of reasonable caution in the belief that a continued detention was justified, i.e., the detainee was or would soon be engaged in criminal activity. *Davis,* 947 S.W.2d at 244–45. In other words, once the purpose of the original detention has been effectuated, any continued detention must be supported by some additional reasonable suspicion, that is, something out of the ordinary is occurring and there is some indication the unusual circumstance is related to a crime. *See Davis,* 947 S.W.2d at 244–45. A detention which is not temporary and reasonably related in scope to the circumstances which justified the interference is unreasonable and violates the Fourth Amendment. *Davis,* 947 S.W.2d at 243.

In this case, Herrera was stopped for a traffic violation. However, Villasana testified that his sole purpose was to get consent to search Herrera's vehicle and apartment, and that he did not help further the investigation of the traffic stop. By the time Villasana arrived, the background check was complete, and the testimony from both Garrison and Crawford was that the only reason to further detain Herrera was to wait for the Spanish-speaking officers. The facts in this case reveal Villasana did not help further investigate or help effectuate the purpose of the stop; he only wanted to obtain consent to search Herrera's apartment and vehicle. Although the evidence clearly shows it took Villasana no more than five to seven minutes to arrive, his admitted purpose was not to assist in effectuating the stop, and Garrison's testimony reveals that, by the time Villasana arrived, the background check was complete and the officers were merely waiting for a Spanish-speaking officer to arrive.

■ We must determine if the purpose of the initial detention had been satisfied by the time Villasana arrived. In *Davis,* the police validly stopped Davis on suspicion of drunk driving, but having determined Davis was not drunk and did not have any outstanding warrants, the police detained him, without reasonable suspicion or probable cause, until the canine unit arrived. *Davis,* 947 S.W.2d at 241, 246. "[T]he validity of an arrest or stop should be determined solely by analyzing objectively the facts surrounding the event." *Garcia v. State,* 827 S.W.2d 937, 943 (Tex. Crim.App.1992). In *Daly,* the court held Daly's due process rights were violated when he was detained unlawfully after being issued a warning on his traffic stop, because no suspicious behavior or incriminating circumstances arose during the stop to justify the continued detention. *State v. Daly,* 35 S.W.3d 237, 241–243 (Tex.App.—Austin 2000, no pet.). In *McQuarters,* the court held detaining McQuarters after the issuance of a warning in order to wait for the canine unit, without evidence showing reasonable suspicion, made the continued detention unreasonable and required the suppression of the evidence. *McQuarters v. State,* 58 S.W.3d 250, 256–257 (Tex. App.—Fort Worth 2001, pet. ref'd).

We hold, based on the facts in this case, the police did not diligently pursue a means of investigation that was likely to quickly dispel or confirm their suspicions

regarding the initial stop. The State did not present any evidence at the hearing on the motion to suppress that Crawford, the officer who witnessed the traffic violation, made any effort to investigate the initial stop. He radioed the narcotics officers to let them know Herrera did not speak the English language, but the evidence shows that he made no attempt to cite Herrera for failing to maintain a single lane or that he communicated with the Spanish-speaking officers at all regarding the stop. The testimony reveals the only purpose for delaying Herrera beyond the background check was to wait for Spanish-speaking officers to arrive. However, after Herrera's background check showed no outstanding warrants for his arrest, no further actions were taken regarding the stop for the traffic violation.

In order to further detain Herrera beyond the initial stop, the State needed to produce evidence of articulable facts showing the officers' reasonable suspicions of illegal activity. The State presented no evidence regarding Herrera's behavior that created reasonable suspicion Herrera was engaged in illegal activity, or soon would be engaged in illegal activity. The State presented no evidence to warrant detaining Herrera beyond the time needed to effectuate the initial stop. We hold Herrera was detained beyond the time needed to investigate the traffic violation, and because no evidence was presented showing reasonable suspicion to further detain Herrera beyond the initial stop, Herrera's Fourth Amendment rights were violated.

■ Herrera's unlawful detention, by itself, does not prohibit the State from using the evidence seized. *See Juarez v. State*, 758 S.W.2d 772, 779–80 (Tex.Crim. App.1988). We must determine whether the State satisfied its burden to prove by clear and convincing evidence that Herrera voluntarily consented, and that his consent was sufficiently purged of its contamination from the unlawful detention so as to validate his consent and thereby make the discovered evidence admissible.

■ When determining whether the State satisfied its burden, we must consider the following factors: 1) proximity of the consent to the arrest; 2) whether the seizure brought about police observation of the particular object which they sought consent to search; 3) whether the illegal seizure was "flagrant police misconduct"; 4) whether the consent was volunteered rather than requested by the detaining officers; 5) whether the arrestee was made fully aware of the fact he could decline to consent and thus prevent an immediate search of the car or residence; and 6) whether the police purpose underlying the illegality was to obtain the consent. *Boyle v. State*, 820 S.W.2d 122, 132 (Tex. Crim.App.1989).

Although Herrera was detained by the police, he was never warned of his *Miranda*[1] rights. Herrera granted consent to search shortly after the unlawful detention began, and there are no intervening factors that separate the unlawful detention from the granting of consent. There was no significant intervening circumstance which would allow this Court to indulge in an inference that the taint of the illegal arrest was purged. *See Boyle*, 820 S.W.2d at 132. As a result of unlawfully detaining Herrera, the police were able to obtain the consensual search and retrieve the incriminating evidence which they had hoped to find in his apartment. Thus, the illegal detention "brought about [the] police observation of the particular object which they sought consent to search."

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct.   1602, 16 L.Ed.2d 694 (1966).

*Brick v. State,* 738 S.W.2d 676, 680 (Tex. Crim.App.1987). Because the search flows directly from the appellant's arrest, these circumstances militate strongly against the attenuation of the taint. *Boyle,* 820 S.W.2d at 132.

The police misconduct in this case was the extension of a lawful investigative detention beyond the scope justified by the information in the police officers' possession. When the officers kept Herrera beyond the background check, their purpose was to obtain Herrera's consent to search his vehicle and apartment. While unlawful, we do not consider this misconduct to be purposefully flagrant. The State produced no evidence at the hearing that Herrera was made fully aware of the fact he could decline to consent and thus prevent an immediate search of the car or residence. With regard to the final factor, Villasana testified the only purpose for his being at the scene was to obtain written consent to search the vehicle and apartment. Crawford only had Herrera stopped for the traffic violation because Pena and Villasana told him, if he could stop Herrera on a traffic stop, to please do so. Although pretextual traffic stops are constitutional, the sole purpose for this stop was to obtain consent, and the sole purpose for detaining Herrera beyond the time necessary to investigate the purpose for the initial stop was to obtain consent to search Herrera's vehicle and apartment. The uncontroverted evidence shows that the police requested consent to search and that Herrera granted consent to search.

■■ Considering all the foregoing factors, we conclude the State has failed to meet its burden of proof and did not demonstrate by *clear and convincing evidence* there were sufficient intervening events between the illegal arrest and the consensual search to break the causal connection so that the consent to search was indeed purged of its primary taint. We hold that Herrera's Fourth Amendment rights were violated and that the trial court erred in denying his motion to suppress. Having determined the trial court erred, we now analyze under Rule 44.2(a) whether the error was harmful. Tex.R.App. P. 44.2(a). Because the evidence sought to be suppressed was the cocaine found in Herrera's apartment as a result of the tainted consent, and because the jury convicted Herrera of possession of a controlled substance with intent to deliver, we hold the trial court's erroneous denial of the motion to suppress was harmful error.

We reverse the judgment and remand for further proceedings consistent with this opinion.

## OPINION ON REHEARING

The State has filed a motion for rehearing in which it contends this Court erred in failing to consider that, at the time the police officers obtained permission from Herrera to search his vehicle and his apartment, they already had a reasonable suspicion Herrera was engaged in or soon would engage in criminal activity. The State argues the officers were justified in detaining Herrera for an investigation unrelated to the initial traffic stop because of the collective knowledge the officers had of Herrera's suspicious conduct before the stop.

■■ The evidence relied on by the State as showing a reasonable suspicion was presented at the guilt/innocence phase of the trial, not at the suppression hearing. As stated in our original opinion, in determining whether a trial court's decision is supported by the record, we generally consider only the evidence adduced at the suppression hearing because the ruling was based on that evidence rather than evidence introduced later. *Rachal v. State,* 917 S.W.2d 799, 809 (Tex.Crim.App.

1996); *see, e.g., Hardesty v. State,* 667 S.W.2d 130, 133 n. 6 (Tex.Crim.App.1984). This general rule, however, is inapplicable when the suppression issue has been consensually relitigated by the parties during trial. *Rachal,* 917 S.W.2d at 809. Where the state raises the issue at trial, either without objection or with subsequent participation in the inquiry by the defense, the defendant has made an election to reopen the evidence and consideration of the relevant trial testimony is appropriate. *Id.;* *see also Webb v. State,* 760 S.W.2d 263, 272 n. 13 (Tex.Crim.App.1988).

▇▇▇ In this case, the parties did not consensually relitigate the issue. During trial, the State asked Officer Pena if Herrera gave him permission to search the apartment, and Herrera objected pursuant to his motion to suppress and obtained a running objection to this line of questioning. Herrera clearly objected to relitigating the issues decided at the hearing on the motion to suppress. The other evidence cited in the State's motion as showing the officers' reasonable suspicion was not introduced for this purpose, but was developed in response to Herrera's defense. Herrera made it clear in his opening statement that his defensive theory would be he was coerced into the drug trade by another person. The evidence on which the State now relies as establishing the officers' reasonable suspicion was introduced not for that purpose, but to attack Herrera's stated defense. Because this evidence was adduced at trial and not at the suppression hearing, and because the suppression issue was not consensually relitigated by the parties during trial, we apply the general rule that we consider only the evidence adduced at the suppression hearing.

▇▇▇ Even if this evidence had been adduced at the suppression hearing, our opinion would remain unchanged. The of-

ficers investigating Herrera's suspicious activities before the stop obviously knew their collective knowledge was not sufficient to detain him. Therefore, they made a pretextual stop for a traffic violation, which Herrera does not contest on appeal. But, they still could not detain him any longer than necessary to investigate that violation unless the officers developed other reasonable suspicion during the investigation of the traffic violation. In other words, the officers could not stop him for a traffic violation and, ignoring that violation, proceed to act on the suspicions they already had before stopping him. Once the reason for the stop had been satisfied, the stop could not be used as a fishing expedition for unrelated criminal activity. *See Davis v. State,* 947 S.W.2d 240, 243 (Tex.Crim.App.1997); *see also Ohio v. Robinette,* 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347, 356 (1996) (Ginsburg, J., concurring).

In its motion, the State cites *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002), in which the United States Supreme Court overturned the Ninth Circuit Court's decision that the defendant had been stopped without reasonable suspicion. In that case, the evidence cited by the Supreme Court showed that a border patrol agent stopped Arvizu on an unpaved remote Arizona road. The officer was working an immigration checkpoint when the "intrusion devices" used to help the border patrol cover remote roads used by smugglers alerted the officer of traffic on a ten-mile unpaved stretch of road rarely traveled except by local ranchers and forest service personnel. *Id.,* 534 U.S. at ——–——, 122 S.Ct. at 747–49, 151 L.Ed.2d at 746–47. The triggering of the sensor was crucial because it indicated someone might be trying to circumvent the checkpoint and the timing coincided with a shift change at the checkpoint, which leaves the area unpatrolled. *Id.* 534 U.S.

at ———————, 122 S.Ct. at 748–49, 151 L.Ed.2d at 747. The officer testified he knew smugglers did extensive scouting of the area and seemed to be most active during shift changes, when agents were en route to and from the checkpoint. *Id.* When he went to investigate, the officer saw a minivan, the type smugglers use, being driven down the road. As he passed the officer, the driver of the minivan slowed dramatically from about fifty to fifty-five miles per hour to twenty to twenty-five miles per hour. The driver of the minivan appeared stiff and tried to pretend the officer was not there, avoiding looking at the officer. The officer found this behavior suspicious because in his experience most people look over to see what is going on, and in that area most people give the border patrol officer a friendly wave. *Id.* 534 U.S. at ——————, 122 S.Ct. at 749–50, 151 L.Ed.2d at 748. The officer could see that the knees of the children in the minivan were up very high, as if their feet were resting on something. The officer began following the minivan, and shortly thereafter all of the children, who though still facing forward, raised their hands at the same time and began waving at the officer in an abnormal pattern. The children continued this pattern on and off for about five minutes. The driver of the minivan then turned off at the last point that would allow him to avoid a checkpoint remaining on a road that, though passable for a minivan, is primarily utilized by four-wheel-drive vehicles. *Id.* The officer radioed in a registration check and, after it returned, decided to pull the minivan over. *Id.* The Supreme Court determined that the totality of these circumstances warranted the stop for further investigation. However, the officer did not stop the minivan because of a traffic violation, but because he had a reasonable suspicion, based on the location of the stop and all the observations he had made just before the stop, that the defendant was engaged in

illegal activity. *Id.* 534 U.S. at ——————, 122 S.Ct. at 752–53, 151 L.Ed.2d at 752.

In this case, Herrera was stopped because an officer had observed him commit a traffic violation. He was not stopped because of the location of his vehicle or for any other suspicious conduct observed by the officers just before the stop. Although the State contends the evidence it cited in its motion indicates Herrera was engaged in narcotics trafficking, the only reason given by Officer Garrison for stopping Herrera was that he had been informed Herrera had violated a traffic law. The purpose of the detention was to investigate the traffic violation. Any consent to search the apartment or the vehicle had to be obtained during the course and scope of the traffic investigation. The State cannot use the evidence from tailing Herrera to justify reasonable suspicion to detain Herrera beyond the time necessary to effectuate the traffic stop absent further evidence of reasonable suspicion. *Arvizu* is inapplicable.

We overrule the State's motion for rehearing.