OPINION HEADING PER CUR 




 NO. 12-03-00207-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS




THE STATE OF TEXAS,
§
 APPEAL FROM THE 392ND

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


MICHAEL DOYLE GRAY,

APPELLEE
§
 HENDERSON COUNTY, TEXAS






OPINION


 The State of Texas (the "State") appeals the trial court's order granting Michael Doyle Gray's
("Gray") motion to suppress 4.63 grams of methamphetamine seized during a strip search at the
Henderson County jail. The State contends in one issue that the trial court misapplied the law to its
findings of fact and therefore improperly granted the motion to suppress. We reverse and remand.


Factual Background


 On April 3, 2003, investigator Jody Miller ("Miller") of the Henderson County Sheriff's
Department (the "sheriff's department") received word from a confidential informant, who had a
record of reliability, that Gray was in the process of transporting methamphetamine across
Henderson County. Miller contacted Sergeant Tony Duncan ("Duncan") of the sheriff's department
with this information and asked him to stake out a position at the corner of Farm-to-Market Road
3704 ("3704") and Farm-to-Market Road 1803 ("1803"). Shortly after Duncan arrived at his
assigned position, Miller notified him by radio that he had spotted Gray turning onto 3704 in a green
Chevrolet pickup. Miller also told Duncan that Gray had failed to signal his intention to make a
right-hand turn while turning onto 3704. As Gray slowed to make the stop at the intersection of
3704 and 1803, he spotted Duncan and a surprised look came over his face. After making the stop,
Gray turned right onto 1803 without signaling. Duncan, who was in a marked sheriff's vehicle, 
immediately pulled in behind Gray and turned on his overhead lights. As he did so, Duncan
observed Gray raising himself off the pickup seat about three to four inches. Duncan testified that
Gray "did a lot of wiggling" before he sat back down and then pulled over. Duncan estimated that
Gray's pickup traveled between four hundred and six hundred feet after he engaged his emergency
lights before Gray pulled over to the side of the road.

 Duncan approached Gray and asked for his driver's license. Duncan noted that Gray's
demeanor was different than he had ever seen before. Although Gray normally was arrogant and
cocky around law enforcement, he was nervous and fidgety during the stop. Gray gave Duncan his
driver's license as requested. While Duncan was checking Gray's driver's license, Miller and
Lieutenant Kay Langford ("Langford") of the sheriff's department arrived on the scene. Gray gave
Langford his consent to search his pickup when she asked him. No drugs were found. The police
department in Chandler, approximately 16 miles away from this traffic stop, was immediately called
to dispatch its drug-sniffing dog to the scene. 

 Duncan asked Gray to produce his proof of insurance card, which Gray retrieved after two
trips to his pickup. While Gray was walking to his pickup, Miller observed that Gray was not
walking in his usual manner. According to Miller, Gray was "kind of squinched up" with the tops
of his legs together as though he was holding something in his buttocks and trying to prevent it from
falling out. At that point, Miller began forming an opinion that Gray had something on his person
that he was trying to conceal.

 Once the drug dog arrived from Chandler, it alerted to drugs on the driver's side seat of
Gray's pickup as well as the driver's side door. The pickup was searched for a second time. Again,
no drugs were found. Duncan then advised Gray that he was going to be arrested for failing to
signal before turning and would be taken to the Henderson County Jail. 

 When informed he was actually going to be arrested, Gray began talking to Miller about
drugs. He told Miller that there had been an offer made to him earlier at the Cole farm, also in
Henderson County, to trade some cyclone fencing for drugs. Gray said that he did not have the drugs
with him. Further, Gray told Miller that he would let him know everything he knew about drugs and
volunteered to help him arrest and make cases on drug dealers operating in the county if he could
be an informant. 

 As part of the process of booking Gray into the Henderson County Jail, a strip search was
performed to determine if deadly weapons or contraband was concealed on Gray's person. This was
standard operating procedure for all individuals booked into the jail. When Gray was strip searched,
a clear plastic baggy containing 4.63 grams of methamphetamine fell out from between his buttocks.


Procedural History


 Gray was subsequently charged with possession of a controlled substance. A hearing was
held on April 11 on the State's motion for denial of bail. The State presented testimony from
Duncan and Miller on the factual background leading to Gray's arrest and testimony by Ty Choate,
Director of the Henderson County Probation Department, that Gray had two previous felonies. The
trial judge denied bail. On April 29, Gray filed a motion to suppress the methamphetamine,
contending that it was illegally seized. A hearing was held on this motion on May 27, with only
Duncan testifying for the State. The trial judge, who had also conducted the bail hearing, took the
matter under advisement. On June 18, he sent a letter to the parties granting Gray's motion to
suppress and making the following findings of fact:



 Based upon a tip that Gray possessed drugs, the Sheriff's Department engineered a pretext
detention of Gray.

 Gray failed to signal at a stop sign.

 Sheriff's Department made a stop and detained Gray.

 Gray gave consent to search his vehicle.

 The vehicle was searched twice.

 After an hour detention, Sheriff's Department arrested Gray for the traffic violation; but, the
reason for the traffic arrest related back to the pretext, namely drug possession. See the
Exhibit attached hereto. (1)



 After Gray's arrest, drugs were found on his person.


 

 Following the seven findings of fact, the trial judge entered two conclusions of law as
follows:



 
 There is no evidence in the record to support the "probable cause" of the pretext.

 There is no evidence in the record to support Gray having committed any offense
independent of the pretext that could justify the continued detention.
 



 The State immediately appealed the trial court's granting of Gray's motion to suppress. See
Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (Vernon Supp. 2004). In one issue, the State contends
that the trial judge misapplied the law to his findings of fact and therefore the order granting Gray's
motion to suppress was error. 


Standard of Review


 We review a trial court's ruling on a motion to suppress under a bifurcated standard of
review. See Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give almost total
deference to the trial court's determination of historical facts, while conducting a de novo review of
the trial court's application of the law to those facts. Id. In applying this standard, we must examine
the record as it existed at the time of the suppression hearing. O'Hara v. State, 27 S.W.3d 548, 551
(Tex. Crim. App. 2000).


Reasonableness of Search and Seizure


 A traffic stop is a Fourth Amendment seizure resembling an investigative detention. See
State v. Daly, 35 S.W.3d 237, 241 (Tex. App.-Austin 2000, no pet.) (citing Berkemer v. McCarty, 
468 U.S. 420, 439, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984)). An investigative detention is
a seizure. Powell v. State, 5 S.W.3d 369, 375 (Tex. App.-Texarkana 1999, pet. ref'd). Therefore,
a traffic stop must be reasonable under the United States and Texas Constitutions. See U.S. Const.
amend. IV; Tex. Const. art. I, § 9. Gray contends that his detention, the search, and the eventual
seizure of the 4.63 grams of methamphetamine were unreasonable under both the Fourth
Amendment and Article I, section 9 of the Texas Constitution. (2) 

 To determine whether an investigative detention is reasonable under the Fourth Amendment,
we make the following two inquiries:


 Whether the officer's action was justified at its inception; and

 Whether it was reasonably related in scope to the circumstances which justified the interference in the
first place.



Terry v. Ohio, 392 U.S. 1, 19-20, 88 S. Ct. 1868, 1878-79, 20 L. Ed. 2d 889 (1968). Reasonableness
is measured in objective terms by examining the totality of the circumstances. Ohio v. Robinette,
519 U.S. 33, 39, 117 S. Ct. 417, 421, 136 L. Ed. 2d 347 (1996). In applying this test, the Supreme
Court has consistently eschewed bright-line rules, and has instead emphasized the fact-specific
nature of the reasonableness inquiry. Id. If during the course of a valid investigative detention, the
officer develops a reasonable suspicion that the detainee is engaged in or soon will engage in
criminal activity, a continued detention is justified. Powell v. State, 5 S.W.3d at 377. After the
initial traffic-violation stop, the officer is entitled to rely on all of the information obtained during
the course of his contact with the citizen in developing the articulable facts that would justify a
continued investigatory detention. Id. (citing Razo v. State, 577 S.W.2d 709, 711 (Tex. Crim. App.
[Panel Op.] 1979; Bustamante v. State, 917 S.W.2d 144, 146 (Tex. App.--Waco 1996, no pet.)).
Where the initial detention is based on a traffic violation, various combinations of factors will
support a reasonable suspicion of criminal activity, sufficient to justify a continued detention or
further questioning unrelated to the traffic violation. See id.

 Under the first inquiry of the reasonableness test in Terry, we must determine whether the
initial stop was justified. See Terry, 392 U.S. at 20, 88 S.Ct. at 1879. The trial judge, in his second
finding of fact, states that "Gray failed to signal at a stop sign." Under Texas law, an operator of a
motor vehicle must indicate his intention to turn or he has violated a traffic law of the State of Texas. 
Tex. Transp. Code Ann. § 545.104(a) (Vernon 1999). In Texas, a police officer may lawfully stop
and detain a person for a traffic violation. Garcia v. State, 827 S.W.2d 937, 944 (Tex. Crim. App.
1992). If probable cause exists for the officer to believe a traffic violation has transpired, the stop
is reasonable. Whren v. U.S., 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772, 135 L. Ed. 2d 89 (1996);
Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000). The facts in this case show that
Duncan had probable cause to stop Gray. Therefore, we answer the first inquiry in the affirmative.

 With reference to the second inquiry under Terry, we review the record to determine whether
there is sufficient evidence in the record to support Gray's continued detention. At the motion to
suppress hearing, Duncan testified that the way Gray acted after he had been stopped, his unusual
movement in the vehicle prior to the stop, the drug dog's alerting on the driver's seat and driver's
side door of Gray's pickup, and the officers' failure to find drugs after searching Gray's pickup twice
caused him to believe that Gray may have had drugs on his person. Miller also testified to these
same facts. Additionally, Miller observed that Gray was walking in a manner that made it appear
that he was trying to keep something between his buttocks and that Gray was interested in helping
law enforcement officials with other drug investigations. The combination of these six
circumstances support a reasonable suspicion of criminal activity that justified a continued detention
and further questioning of Gray unrelated to the traffic violation. See Powell, 5 S.W.3d at 377. 

 In response, Gray cites two cases to show that the search of Gray and his vehicle were
unreasonable under the Fourth Amendment. However, both cases are distinguishable. The first case
Gray cites is McQuarters v. State, 58 S.W.3d 250 (Tex. App.-Fort Worth 2001, pet. ref'd). That
case is not applicable because McQuarters refused to give law enforcement officials authority to
search his vehicle. Id. at 254. Here, Gray almost immediately gave the Henderson County Sheriff's
Department consent to search his pickup. Neither probable cause nor exigent circumstances are
required to justify a warrantless search where consent has been validly obtained. See Reasor v.
State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). Gray did not contest the validity of his consent
either at trial or on appeal.

 The second case Gray cites is Herrera v. State, 80 S.W.3d 283 (Tex. App.-Texarkana 2002,
pet. ref'd). In that case, Herrera had been stopped by a police officer for a traffic violation, failure
to maintain a single lane, that had been observed by another officer. Id. at 287. Herrera gave the
officer his valid Texas driver's license, and the officer ran a background check on the license
number. Id. The officer who stopped Herrera did not issue Herrera a citation because he had not
actually seen the traffic violation. Id. However, Herrera did not speak English, and the officer asked
Herrera to remain on the scene until a Spanish-speaking officer arrived. Id. The Spanish-speaking
officer obtained written consent from Herrera to search his vehicle. During the subsequent search,
a controlled substance was found in Herrera's vehicle. Id. The Texarkana court determined that the
State had failed to produce evidence of articulable facts showing a reasonable suspicion of illegal
activity which justified detaining Herrera at the scene until the Spanish-speaking officer arrived. Id.
at 288-89.

 The facts in Herrera are distinguishable from the facts involving Gray's search and
detention. Gray consented to the search of his vehicle about five minutes after Duncan stopped him
while Herrera did not consent until some time after his detention should have terminated. 
Furthermore, the State presented no evidence to warrant detaining Herrera beyond the time needed
to effectuate the initial stop. Id. at 289. Any continued detention must be based on articulable facts
which, taken together with rational inferences from those facts, would warrant a person of reasonable
caution in the belief that a continued detention was justified. Id. at 288. There were no such
articulable facts or circumstances in Herrera, but there are at least six articulable facts and
circumstances stated by Duncan and Miller in the record in the instant case. Therefore, we hold that
the second inquiry under Terry must also be answered in the affirmative. 

 The trial court's second conclusion of law states there was no offense independent of Gray's
drug possession to justify his continued detention. Again, we observe that this conclusion fails to
comport with the court's own findings of fact. The court specifically determined that Gray had failed
to signal at a stop sign. Any peace officer may arrest without warrant a person found committing
a traffic violation. Tex. Transp. Code Ann. § 543.001 (Vernon 1999). When Duncan arrested
Gray for failing to signal his turn onto 1803, he did not violate Gray's Fourth Amendment rights. 
See Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S. Ct. 1536, 1557, 149 L. Ed. 2d 549
(2001). We hold there was evidence in the record to support Gray's arrest and detention. Therefore,
the trial judge did not properly apply the law to the facts. The State's sole issue is sustained.


Conclusion


 Having sustained the State's sole issue, we reverse the trial court's order granting Gray's
motion to suppress and remand this cause to the trial court for further proceedings consistent with
this opinion.


 JAMES T. WORTHEN 

 Chief Justice

 


Opinion delivered February 18, 2004.

Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.



(PUBLISH)
1. Excerpt from Cross-examination by Mr. Brian Schmidt



 And do you see a time of arrest on that?




 It says 1359.



 

Footnote continued.



 So the 1410 time would be the time -




 That he got there.




 That he got to the jail?




 Right.



 Excerpts from Direct Examination by Mr. McDonald



 Deputy Duncan, about what time did you stop the vehicle?




 I believe it was right at 12:55.




 Based upon the information concerning the drug dog, at some point did you make a decision to
arrest the defendant?




 Yes, I did.




 What did you base your arrest on?




 Due to the way he was acting, the movement in the vehicle prior to the stop, the dog alerting on the
vehicle without anything being found, we went ahead and - I went ahead and arrested him for the
fail to signal turn.




 And is that legal in the State of Texas?




 Yes, it is.




 You can arrest for any traffic stop other than speeding and I believe an open container.




 Yes, sir.


 

2. Gray does not provide separate authority or argument for his state constitutional claims; therefore we
decline to address them. See Tex. R. App. P. 38.1; see also Heitman v. State, 815 S.W.2d 681, 690-91 n.23 (Tex.
Crim. App. 1991).