In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00058-CR
______________________________


EZEQUIEL GARZA GARZA, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 339th Judicial District Court
Harris County, Texas
Trial Court No. 908290


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            Ezequiel Garza Garza was charged with possession of marihuana of 2,000 pounds or less but
more than fifty pounds. An enhancement paragraph alleged Garza had previously been convicted
of possession of a controlled substance with intent to deliver. After the motion to suppress evidence
was denied, Garza pled guilty to the offense and true to the enhancement paragraph and was
sentenced by the trial court to forty-five years' confinement. The only issue on appeal is the
admissibility of the evidence from the search. We affirm the judgment of the trial court. 
Factual Background
            Deputy Kevin Monfort of the Harris County Sheriff's Department received an anonymous
tip that narcotics activity was occurring at 8823 Dirby in southeast Harris County. He verified that
Garza lived there, that Garza had a previous drug conviction, had been deported, and was illegally
in the country. Based on this information, Monfort began to observe that location. Shortly
thereafter, Detective Mike Weinel and Sergeant Mark Bedford arrived at the scene. The officers
requested a narcotics detection dog, and Deputy Preston Foose, a certified canine handler, responded
with a trained dog. After Monfort left the area with the intent to obtain a search warrant, the dog
alerted to the presence of narcotics at the front door and the garage door of the residence at 8823
Dirby. The officers observed Garza exit the residence at 8823 Dirby and go to an adjacent residence
at 8819 Dirby. Two individuals then drove away from 8819 Dirby in a red Jeep Cherokee. Garza
was later identified as the passenger in the Cherokee. 
            Various units that were throughout the subdivision conducted "rolling" surveillance on the
Cherokee and observed that neither individual was wearing a seat belt. The driver of the vehicle also
made two turns without signaling. When Foose caught up with the Cherokee in his marked patrol
car, he activated his lights and siren and attempted to pull the driver of the Cherokee over. The
driver of the Cherokee then accelerated and drove around a truck, which was blocking the road, by
driving through a shallow ditch and a yard. The driver of the Cherokee did not stop until he
encountered Houston Police Department patrol cars about three blocks away. 
            Both Garza and the driver were asked to get out of the vehicle. Both were advised of their
Miranda


 rights. Although initially reluctant, Garza consented to the search of his residence at this
point. Shortly after returning to his residence, Garza signed a written form consenting to the search
of the house at 8823 Dirby and the vehicles located adjacent to the residence. After consent had been
given, Monfort decided not to obtain a search warrant. 
            The search of Garza's residence and the adjacent vehicles occurred without a warrant. The
officers discovered 360 pounds of marihuana in the trunk of an Acura parked in front of the garage
at Garza's residence. Garza provided the officers with the keys to the Acura. A weapon was found
during the search of Garza's residence at 8823 Dirby.
Admissibility of the Evidence from the Search
            In his sole point of error, Garza argues the trial court erred in failing to suppress the evidence. 
He contends that he was detained beyond the time needed to investigate the traffic violation and that
the detention was not based on reasonable suspicion that he was or would soon be engaged in other
criminal activity. We disagree. The trial court did not abuse its discretion in overruling the motion
to suppress because the officers had reasonable suspicion Garza was engaged in criminal activity.
            A trial court's decision to grant or deny a motion to suppress is reviewed under an abuse of
discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). The general rule
is that an appellate court should afford almost total deference to a trial court's determination of the
historical facts supported by the record, especially when the trial court's fact-findings are based on
an evaluation of credibility and demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App.
2000). At a suppression hearing, the trial court is the exclusive trier of fact and judge of the
credibility of the witnesses. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We are
also to afford such deference to a trial court's ruling on "application of law to fact questions," also
known as "mixed questions of law and fact," if the resolution of those questions turns on an
evaluation of credibility and demeanor. Ross, 32 S.W.3d at 856. We may review de novo those
questions not turning on credibility and demeanor. Id. Where, as here, a trial court makes no
explicit findings of historical fact, the appellate court should view the evidence in the light most
favorable to the trial court's ruling and assume the trial court made implicit findings of fact. 
Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). 
            Monfort stopped the vehicle in which Garza was the passenger because the occupants were
not wearing their seat belts and fled when the officers attempted to pull the driver of the vehicle over. 
The stop for Garza involved a traffic stop for failure to wear his seat belt. As a traffic stop, there are
limitations to an investigation.
            Although similar to investigatory detentions, traffic stops are distinguishable. A law
enforcement officer may lawfully stop and detain a person for a traffic violation. Zervos v. State,
15 S.W.3d 146, 151 (Tex. App.—Texarkana 2000, pet. ref'd). "A routine traffic stop resembles an
investigative detention." State v. Cardenas, 36 S.W.3d 243, 246 (Tex. App.—Houston [1st Dist.]
2001, pet. ref'd). However, the scope of the inquiry is limited to investigation of the traffic violation
and a few routine inquiries. Courts recognize that, during a traffic stop, the officer has a right to
check for outstanding warrants and to examine the detainee's driver's license, insurance, and
identification. Powell v. State, 5 S.W.3d 369, 377 (Tex. App.—Texarkana 1999, pet. ref'd). The law
enforcement officer may ask about the driver's destination and purpose for traveling during a valid
detention, but the detainees are not required to answer. Cardenas, 36 S.W.3d at 246; see Powell,
5 S.W.3d at 377. 
            The investigating officers conceded that the detention of Garza did not involve any further
investigation of the traffic violations. Our inquiry is whether the officers were justified in the further
detention of Garza after the traffic stop had ended. Once a police officer makes a lawful traffic stop,
he or she may also investigate any other offense the officer reasonably suspects has been committed.
Bachick v. State, 30 S.W.3d 549, 551–52 (Tex. App.—Fort Worth 2000, pet. ref'd). Further
detention for investigation beyond the traffic violation requires the officer to have a reasonable
suspicion of further criminal activity. The United States Supreme Court in Terry v. Ohio established
the test for investigative detention, i.e. "Terry Stops." Terry established a two-pronged test for
investigative detentions. To determine the reasonableness of an investigative detention, the court
must inquire: "(1) whether the officer's action was justified at its inception; and, (2) whether it was
reasonably related in scope to the circumstances which justified the interference in the first place." 
Davis v. State, 947 S.W.2d 240, 242 (Tex. Crim. App. 1997); see Terry v. Ohio, 392 U.S. 1, 19–20
(1968). 
            "Under the first prong, 'the police officer must be able to point to specific and articulable
facts which, taken together with rational inferences from those facts, reasonably warrant that
intrusion.'" Davis, 947 S.W.2d at 242 (citing Terry, 392 U.S. at 21). The specific, articulable facts,
along with rational inferences from those facts, must allow the officer to reasonably conclude that
the person detained actually is, has been, or soon will be engaged in criminal activity. United States
v. Sokolow, 490 U.S. 1, 10 (1989). 
            The second prong of Terry requires the scope of the detention to be "like any other search,
be strictly circumscribed by the exigencies which justify its initiation." Davis, 947 S.W.2d at 243
(citing Terry, 392 U.S. at 25–26). The officer, however, must diligently pursue a means of
investigation that lasts no longer than is necessary and should be the "least intrusive means
reasonably available." Davis, 947 S.W.2d at 245. 
            Under the first prong of Terry, we must determine if the further detention of Garza was
reasonable. A law enforcement officer may rely on information, obtained in the course of his or her
contact with a citizen, in justifying further detention. Powell, 5 S.W.3d at 375. The officers
admitted they had concluded the traffic stop by the time consent was acquired to search Garza's
residence and adjacent vehicles. Any continued detention must be based on specific, articulable facts
which would warrant a person of reasonable suspicion to believe the detainee was or would soon be
engaged in criminal activity. Davis, 947 S.W.2d at 244–45. In order to continue to detain Garza,
specific, articulable facts must have allowed the officers to develop a reasonable suspicion that
additional criminal activity was occurring. 
            There were sufficient specific, articulable facts to justify reasonable suspicion of drug
activity. Monfort had received an anonymous tip that drug activity was occurring at 8823 Dirby,
which was Garza's residence. Monfort testified that he had verified Garza resided at that address and
that one of the vehicles in the yard of the residence belonged to Christina Garza, who was married
to Ezequiel Garza. Monfort had also learned before the detention that Ezequiel Garza had previously
been convicted for a drug offense, had been deported, and was in the country illegally. Further, the
dog alerted to the presence of narcotics at the front door and the garage door of the residence at
8823 Dirby. The trial court did not abuse its discretion in finding that these facts were specific and
articulable facts sufficient to create reasonable suspicion of drug activity. 
            Garza argues his situation is analogous to Herrera v. State, 80 S.W.3d 283, 287 (Tex.
App.—Texarkana 2002, pet. ref'd), which found Herrera's detention unreasonable due to the lack of
reasonable suspicion. Because there is reasonable suspicion, this case is distinguishable from
Herrera. In Herrera, the defendant was pulled over for a traffic violation. Id. Although the officers
did not conduct an investigation of the traffic violation, they detained Herrera until a Spanish-speaking officer arrived to request consent to search Herrera's vehicle. Id. at 288–89. When the
Spanish-speaking officer arrived, Herrera, who did not speak English, consented to the search of his
vehicle. Id. at 287. During the subsequent search, the officers discovered a controlled substance. 
Id. In Herrera, no evidence of reasonable suspicion of any other criminal activity was presented
during the suppression hearing. Id. at 290–91 (op. on reh'g). Therefore, the detention of Herrera
beyond the time necessary to investigate the traffic offense was unreasonable. Id. at 288–89. As
discussed above, in this case, the State presented evidence of specific, articulable facts creating
reasonable suspicion that Garza was involved in criminal activity. Thus, the trial court did not abuse
its discretion in finding the further detention of Garza reasonable.
            The issue then becomes whether the officers' transport of Garza to his residence was an
unreasonable intrusion. Under the second prong of Terry, the temporary detention of Garza must
be reasonable. "An investigative detention must be temporary and last no longer than is necessary
to effectuate the purpose of the stop." Davis, 947 S.W.2d at 245; see Florida v. Royer, 460 U.S. 491,
500 (1983); see also Herrera, 80 S.W.3d at 287. "The investigative methods employed should be
the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short
period of time." Davis, 947 S.W.2d at 245 (quoting Royer, 460 U.S. at 500).
            The United States Supreme Court has indicated that a nonarrest detention made on reasonable
suspicion can be rendered unreasonable by excessive movement of the suspect, i.e., the movement
from a field location to a station house is excessive. See Hayes v. Florida, 470 U.S. 811 (1985);
Dunaway v. New York, 442 U.S. 200 (1979). In Royer, the United States Supreme Court in a
plurality decision held that movement of approximately forty feet was excessive. Royer, 460 U.S.
491. The Supreme Court's concern focused on movement unrelated to any legitimate law
enforcement objective which significantly changed the nature of the detention. In Royer, the suspect
was detained on a busy airport concourse with the suspicion that he was transporting narcotics. Id.
at 494. The suspect was moved a distance of approximately forty feet to a small office removed
from public view. Id. The Supreme Court held that the movement changed the nature of the
detention by placing the defendant in a small room essentially under the control of the officers and
removing the detention from public view. Id. at 496. The Supreme Court further reasoned that the
movement was unrelated to the objective of the detention of searching Royer's luggage, which could
have just as easily been searched on the concourse. Id. Although the Supreme Court noted the
movement increased the likelihood of Royer granting consent, it held increasing the likelihood of
consent was not a legitimate purpose. Id. Therefore, the Supreme Court held the methods employed
in Royer were not the least intrusive available. Id.
            Although Garza's detention is distinguishable from Royer, we note there are some
similarities. In Royer, the suspect was detained less than fifteen minutes. Id. at 495. Likewise,
Garza was detained at most fifteen minutes. Garza was moved a greater distance than forty feet. 
Further, Garza was surrounded by a number of officers. However, there are three important
differences between Garza's detention and Royer. We cannot say that the movement changed the
nature of the detention. Garza was moved from being detained in the street to being detained in front
of his house. Unlike Royer, this move did not create an environment which removed him from
public view or placed him more extensively under the control of the officers. Second, unlike the
situation in Royer, the movement did facilitate greater convenience in conducting the search. The
search of the residence could be conducted with greater convenience if Garza was transported to the
residence. Thus, the movement of the suspect was related to a legitimate law enforcement objective. 
Additionally, Garza orally consented to a search of his residence before any movement, whereas in
Royer, the consent came only after the accused was moved into a small room. 
            Further, we note that several Texas courts have held that transporting an individual to the
scene of the alleged crime or another location is not an unreasonable intrusion. Joseph v. State, 865
S.W.2d 100, 103 (Tex. App.—Corpus Christi 1993, pet. ref'd) (least intrusive means available to
investigate suspicion); Davis v. State, 783 S.W.2d 313, 317 (Tex. App.—Corpus Christi 1990, no
pet.) (reasonable investigative detention involving transporting suspect to the scene two and a half
miles away); Dittoe v. State, 935 S.W.2d 164, 166–67 (Tex. App.—Eastland 1996, no pet.) (suspect
transported a few blocks to the victim's house). Because this case is distinguishable from Royer, we
hold that the transportation of Garza to his residence was not unreasonable.
Conclusion
            The trial court did not abuse its discretion in denying the motion to suppress. Although the
officers stopped Garza for a traffic violation, the State presented evidence that the officers had
specific, articulable facts creating reasonable suspicion that Garza was engaged in other criminal
activity. In the circumstances of this case, the movement of the suspect back to his residence was
not unreasonable. The trial court did not abuse its discretion in finding that the further detention and
the scope of the investigation were reasonable.
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice

Date Submitted:          March 12, 2004
Date Decided:             March 18, 2004

Do Not Publish