Opinion issued June 17, 2004



     












In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00193-CR




ELIAS GARZA, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 339th District Court
Harris County, Texas
Trial Court Cause No. 926738




MEMORANDUM OPINION

          After the trial court denied his motion to suppress, appellant, Elias Garza,
pleaded guilty to possession with intent to manufacture or deliver cocaine weighing
at least 400 grams. The trial court assessed punishment at 35 years’ confinement and
a $5000 fine and certified appellant’s right to appeal the denial of his motion to
suppress. We affirm.
BACKGROUND
          Appellant and Ezequiel Garza are brothers and live next door to one another—
appellant at 8819 Dirby Street and Ezequiel at 8823 Dirby Street. On April 9, 2002,
police officers with the Harris County Sheriff’s Department received information
from an anonymous source that drugs were being sold from Ezequiel’s house. In
their subsequent investigation, the officers learned that Ezequiel had been deported
because of a previous felony drug conviction, but had returned to the country illegally
and was living with his wife at the house on Dirby Street. During their surveillance
of Ezequiel’s house, police officers saw three cars parked in the driveway. Harris
County Deputy Monfort called for a canine handler to come to the location, and 
Harris County Deputy Foose responded with his narcotics-detection dog, Rudy. The
dog alerted on the front door and the garage door of Ezequiel’s house, and Monfort
immediately left the scene to obtain a search warrant.
          While Monfort was on his way to get a warrant, other officers maintained
visual surveillance of the Ezequiel’s house. The officers performing surveillance saw
Ezequiel come out of his house, walk next door into appellant’s house, and then
return to his own house. They also saw appellant leave his house and pace nervously
around outside as if he were waiting for someone. After a short while, Ezequiel came
back out of his house, jumped over a short chain link fence separating the two houses,
and drove away with appellant in appellant’s red Jeep Cherokee. Appellant drove the
Cherokee, and Ezequiel sat in the passenger seat.
          Deputy Foose, the canine handler, was parked a short distance away in a
marked patrol car. When he saw that appellant and Ezequiel were not wearing
seatbelts, he activated his lights and siren and attempted to pull them over. Appellant
did not pull over, but, instead, drove through a ditch, into a yard, and onto another
street. After continuing for more than three blocks, appellant finally pulled over
when he saw more patrol cars approaching.
          Foose approached the Cherokee, told appellant and Ezequiel to get out of the
car, and read them their statutory warnings. Foose then asked Ezequiel if he would
consent to the search of his house. Ezequiel agreed, and, after about a 15 to 20 minute
detention, the deputies drove Ezequiel and appellant back to their houses. 
          While the deputies searched Ezequiel’s house pursuant to his consent, Harris
County Deputy Dearmon stood outside with appellant.


 Dearmon asked appellant if
there were any drugs inside his house at 8819 Dirby. Appellant said, “Well, yeah.” 
Dearmon asked if appellant would sign a consent to search form. Appellant said,
“No, I don’t have any problem with it. I promise you, if there’s any dope in there, it
belongs to my brother.” Dearmon then read the consent to search form to appellant,
who signed it. Dearmon testified that appellant “understood fully” that his consent
was voluntary. Appellant then showed Dearmon the kilogram of cocaine that was in
his house, but he reiterated that it belonged to his brother. Deputies found 15 more
kilograms of cocaine in appellant’s garage, $390,000 in cash, and some weapons.
MOTION TO SUPPRESS
          In his sole point of error, appellant contends that the trial court erred by
refusing to suppress the evidence recovered from his house at 8819 Dirby. 
Specifically, appellant contends that he was “detained beyond the time needed to
investigate the traffic violation for which he was stopped, since there was no
reasonable suspicion that appellant was or would soon be engaged in criminal
activity.” Essentially, appellant argues that his consent was obtained as a result of an
illegal detention.
Standard of Review
          A trial court’s decision to grant or deny a motion to suppress is reviewed under
an abuse of discretion standard. Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App.
1999). At a suppression hearing, the trial court is the exclusive trier of fact and judge
of the credibility of the witnesses. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997). We are also to afford such deference to a trial court’s ruling on
“application of law to fact questions,” also known as “mixed questions of law and
fact,” if the resolution of those questions turns on an evaluation of credibility and
demeanor. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000). We may
review de novo those questions not turning on credibility and demeanor. Id. Where,
as here, a trial court makes no explicit findings of historical fact, the appellate court
should view the evidence in the light most favorable to the trial court’s ruling and
assume the trial court made implicit findings of fact. See Carmouche v. State, 10
S.W.3d 323, 328 (Tex. Crim. App. 2000).
Length of Detention
          Appellant, citing Herrera v. State, 80 S.W.3d 283, 287 (Tex. App.—Texarkana
2002, pet. ref’d), contends that the officers exceeded the time necessary to investigate
the traffic offense for which he was stopped, (i.e., failing to wear his seatbelt). In
Herrera, police stopped the defendant for a traffic violation. Id. Although the
officers did not conduct an investigation of the traffic violation, they detained Herrera
until a Spanish-speaking officer arrived to request consent to search Herrera’s
vehicle. Id. at 288-89. When the Spanish-speaking officer arrived, Herrera, who did
not speak English, consented to the search of his vehicle. Id. at 287. During the
subsequent search, the officers discovered a controlled substance. Id. In Herrera, no
evidence of reasonable suspicion of any other criminal activity was presented during
the suppression hearing. Id. at 290-91 (op. on reh’g). Therefore, the court of appeals
found Herrera’s detention beyond the time necessary to investigate the traffic offense
to be unreasonable. Id. at 288-89. 
          This case is distinguishable from Herrera. First, appellant was not just
detained—after he attempted to evade arrest, he was arrested and read his rights. 
Second, the State presented sufficient specific, articulable facts to justify a reasonable
suspicion of drug activity, not simply a traffic offense. Monfort had received an
anonymous tip that drug activity was occurring at 8823 Dirby, which was Ezequiel’s
residence, and next door to appellant’s. Monfort testified that he had verified that
Ezequiel resided at that address and that one of the vehicles in the yard of the
residence belonged to Christina Garza, Ezequiel’s wife. Monfort had also learned
before the detention that Ezequiel had been previously convicted for a drug offense,
had been deported, and was in the country illegally. Further, the drug dog alerted to
the presence of narcotics at both the front door and the garage door of Ezequiel’s
house. Police officers had seen Ezequiel going into appellant’s house, and then
coming out and looking around as if waiting for something. Appellant also came out
of his house and looked anxiously around. Finally, both men left together in
appellant’s Cherokee together. When Foose tried to initiate a traffic stop, appellant
did not pull over, but drove through a yard in an attempt to evade the police. We
conclude that the trial court did not abuse its discretion in finding these specific and
articulable facts sufficient to create a reasonable suspicion that appellant was
involved in drug activity. See Hererra, 80 S.W.3d at 287 (stating that “continued
detention must be based on articulable facts which, taken together with rational
inferences from those facts, would warrant a person of reasonable caution in the
belief that a continued detention was justified, i.e., the detainee was or would soon
be engaged in criminal activity.”). As such, appellant’s continued detention while the
police officers conducted a consensual search of Ezequiel’s house was justified.
Consent to Search
          Furthermore, the record shows that appellant consented to the search of his
house. Dearmon testified that he asked appellant if he could search his house. 
Appellant responded that he did not mind. Dearmon then read the consent to search
form to appellant and told him that he did not have to sign it. Dearmon also told
appellant that they would not go in the house if he chose not to sign the form. 
Nevertheless, appellant signed the form permitting the officers to search his house.
          A search pursuant to voluntary consent is an exception to the requirement that
a search must be based upon a warrant supported by probable cause. See Reasor v.
State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000). For consent to be valid, however,
it must be voluntary. Id. at 817-18. To determine voluntariness, trial courts “must
[assess] the totality of all the surrounding circumstances–both the characteristics of
the accused and the details of the interrogation.” Id. at 818, (quoting Schneckloth v.
Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041 (1973)).
          In Reasor, the defendant was arrested at gunpoint, and the police illegally
swept his house for weapons. 12 S.W.3d at 815-17. Nevertheless, the court
concluded that the defendant’s subsequent consent to search was voluntary, because
the defendant twice received his statutory warnings, signed a consent to search form,
and was repeatedly warned that he had the right to remain silent. Id. at 818. The
court concluded that the defendant was aware of his rights, but, nonetheless,
voluntarily chose to waive them. Id. at 819.
          In this case, as we have already determined, police lawfully detained appellant. 
At the time he consented to search his home, the following circumstances existed: (1)
appellant was not handcuffed, (2) he had been read his statutory rights, (3) the
consent to search form had been read and explained to him, (4) he was told that he did
not have to sign the form and that the officers would not search the house without his
written consent, and (5) he read and signed the consent to search form. There is
nothing to indicate that appellant’s “will was overborne” by oppressive police
conduct. See Goldberg v. State, 95 S.W.3d 345, 361 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d). Accordingly, the trial court did not err by finding that appellant
freely gave consent to search.
DISPOSITION
          Because appellant was lawfully detained and voluntarily consented to a search,
the trial court did not err by overruling appellant’s motion to suppress. Accordingly,
we overrule appellant’s sole point of error and affirm the judgment of the trial court.
 
 
                                                             Sherry Radack
                                                             Chief Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.

Do not publish. Tex. R. App. P. 47.2(b).