NO.
12-06-00259-CR

NO. 12-06-00260-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

THE STATE OF TEXAS,    §          APPEAL
FROM THE THIRD

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

MICHAEL HARVEY
SHEPPARD,

APPELLEE   §          ANDERSON
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            The State of
Texas appeals from the trial court’s order granting Michael Wayne Sheppard’s
motion to suppress evidence.  We affirm.

Background

            On November
28, 2004, Anderson County Sheriff’s Deputy John Smith was dispatched to a
convenience store in Palestine, Texas to talk to Arthur Snyder.  Snyder told the deputy that he and Appellee
and another person had all been at Appellee’s home using drugs earlier that day
when Appellee threatened Snyder with a knife. 
Deputy Smith went to the residence to investigate and knocked on the
door.  Appellee answered the door, and
Smith conducted a search of his person. 
The search revealed a knife in Appellee’s pocket.  Deputy Smith handcuffed Appellee and did a
brief walk through of the trailer.  He
later testified that he walked through the trailer to see if he could locate
the third person as well as for his safety and to secure any evidence that
might be present.  Deputy Smith did not
find the third person, but he observed what appeared to be controlled
substances in plain view throughout the home.








            After
exiting the trailer, Deputy Smith released Appellee from the handcuffs and
asked if he would consent to a search of the home.  Appellee agreed and signed a written consent
to search.  Thereafter, a team of
investigators searched the home, finding and recovering illegal narcotics and
other chemicals.

            An Anderson
County grand jury indicted Appellee for the felony offenses of possession of a
controlled substance and possession of chemicals with the intent to manufacture
methamphetamine, both second degree felonies. 
Appellee filed a motion to suppress the evidence in each case, and an
evidentiary hearing was held.  Following
the hearing, the trial court ordered that all the evidence be suppressed and
entered written findings of fact and conclusions of law.  This appeal by the State followed.

Search and
Seizure

            In
five issues, the State argues that the trial court erred in granting the
motions to suppress.  Specifically, the
State argues that the initial searches of Appellee’s person and home were
supported by reasonable suspicion, that Appellee had not been arrested at the
time he gave consent to search, and even if there had been an illegal arrest,
the taint of that arrest had dissipated by the time consent was given.

Standard of Review

            We
review a trial court’s ruling on a motion to suppress in the light most
favorable to the ruling.  See State
v. Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  A trial court judge is uniquely situated to
observe the demeanor and appearance of a witness and to make factual
determinations.  See State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000); Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
Therefore, the trial court is the sole trier of fact, and when reviewing
a ruling on a motion to suppress, we must afford almost total deference to the
trial court’s factual conclusions.  See
Wiede v. State, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007).  We afford the same amount of deference to the
trial court’s rulings on “application of law to fact questions,” also known as “mixed
questions of law and fact,” if the resolution of those ultimate questions turns
on an evaluation of credibility and demeanor. 
See Montanez v. State, 195 S.W.3d 101, 106 (Tex.
Crim. App. 2006).  We review de novo
wholly legal conclusions as well as mixed questions of law and fact that do not
turn on an evaluation of credibility and demeanor.  Id.  The trial court’s ruling will be upheld if it
is reasonably supported by the record and is correct on any theory of law
applicable to the case.  Ross,
32 S.W.3d at 855–56.

Applicable Law

            The
Fourth Amendment to the United States Constitution prohibits unreasonable
searches and seizures.  U.S. Const. amend. IV.  The touchstone of Fourth Amendment analysis,
therefore, is reasonableness.  See
Ohio v. Robinette, 519 U.S. 33, 39, 117 S. Ct. 417, 421, 136 L.
Ed. 2d 347 (1996).  A warrantless search
of a home is presumptively unreasonable. 
See Payton v. New York, 445 U.S. 573, 586, 100 S.
Ct. 1371, 1380, 63 L. Ed. 2d 639 (1980). 
It is reasonable, however, for a law enforcement officer to conduct a
brief investigative detention of a person without a warrant when he has
reasonable suspicion to believe that the person is involved in criminal
activity.  Terry v. Ohio,
392 U.S. 1, 30-31, 88 S. Ct. 1868, 1884–85, 20 L. Ed. 2d 889 (1968); Balentine
v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002).  In such a scenario, the officer may frisk a
person for weapons if he has a particularized suspicion that the person is
presently armed and dangerous.  Terry,
392 U.S. at 27, 30–31, 88 S. Ct at 1883–86.

            Another
exception to the general warrant requirement is consent.  See Reasor v. State, 12
S.W.3d 813, 817 (Tex. Crim. App. 2000). 
If a person voluntarily agrees to allow the police to conduct a search,
the police may conduct that search without a warrant.  Id. at 817–18. 

Analysis

            As
the trial court recognized, there are at least four searches or seizures are
presented.  The first is the frisking of
Appellee’s person.  The second is the
detention or arrest of Appellee.  The
third is the walk through of the home. 
The fourth is the comprehensive search of the residence.  The trial court found each of these actions
by the police officer to be illegal.

            The
police recovered the evidence that formed the basis of the prosecution during
the comprehensive search of the residence, which was conducted after the police
obtained written consent from Appellee. 
The trial court found that the consent given for that search was invalid
on two independent grounds.  First, the
trial court found that the consent was the product of a custodial interrogation
conducted without the benefit of Miranda[1] warnings.  Second, the trial court found that Appellee
had been illegally arrested or detained and that the taint of that illegal
seizure had not attenuated at the time consent was sought and obtained.

            The
first conclusion is error.  There is no
requirement that Miranda warnings, or any other warnings, be
given before consent is sought.  See
Rayford v. State, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (“Contrary
to appellant’s claims, we know of no authority that requires informing a
suspect of his rights under Miranda before obtaining a consent to
search, and Appellant points to none.”). 
Therefore, we cannot affirm the trial court’s ruling on the basis that
the consent occurred as a result of a custodial interrogation.

            The
second conclusion is based on two components. 
The first is that the arrest or detention of Appellee was illegal.  The second is that the illegal detention
tainted and invalidated the subsequently obtained consent.  We will analyze these issues in turn.

            I.
Initial Detention

            With
respect to the initial detention of Appellee and the search of his person, the
State’s first issue, the trial court concluded as a matter of fact that “Deputy
Smith did not have specific articluable [sic] facts to support a reasonable
suspicion to believe the defendant was engaged in criminal activity to justify
the search of defendant or placing him in handcuffs,” and that “Deputy Smith .
. . gave no valid reasons or basis for his concern” about his safety.  As a matter of law, the trial court concluded
that the “‘pat down or frisk of defendant’ was without justification and
therefore illegal.”

            The
deputy testified that he frisked Appellee for “officer safety.”  When asked on cross examination if he was
afraid of Appellee, the deputy testified that he had “a general distrust of
most people I don’t know.”  This is
insufficient to support the frisk.  To
support a protective frisk or detention, there must be facts that, when
reviewed under an objective standard, would cause a reasonably cautious person
to believe that the action taken was reasonable or that the person frisked was
presently armed and dangerous.  See O’Hara
v. State, 27 S.W.3d 548, 550–51 (Tex. Crim. App. 2000) (citing Terry
v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)).  A blanket statement of officer safety or a
policy of routine frisking does not meet this standard.  O’Hara, 27 S.W.3d at 553 (“We
reject the State’s argument that routine alone is sufficient to justify a pat–down.”).

            But
this test is an objective test, and the officer’s failure to articulate a
lawful basis for the frisk or detention does not mean that they were
illegal.  As the court observed in O’Hara,
a search can be reasonable if there are objective facts to support it, even if
the officer’s stated justification for the search is insufficient.  Id. at 554-55.  In O’Hara the court upheld a
search where the officer testified that he conducted it as a matter of
routine.  The court found that there were
objective facts that supported the search, including the fact that the
defendant had been armed.  Id.
at 555. 

            Here,
there were objective facts that could have supported a frisk and
detention.  The officer had received a
report that Appellee had committed a crime and was armed with a knife.  If believed, these facts could support the
conclusion that Appellee was armed and presented a danger as well as a
reasonable suspicion that he was involved in criminal activity.  The trial court specifically considered the
report that Deputy Smith had taken from Arthur Snyder.  Nevertheless, the court found that the frisk
was without justification and that there were not articulable facts to support
a reasonable suspicion that Appellee was engaged in criminal activity.

            Because
the facts, as enunciated, would have supported a frisk and detention, the
question is whether the trial court did not believe the testimony at all, did
not believe a report taken from Snyder could be afforded any weight, or did not
properly apply the law to the facts.  In
light of the standard of review, we are obligated to defer to the trial court’s
factual finding that there were not believable, objective facts to support the
initial detention and frisk of Appellee rather than conclude that the trial
court misapplied the law.  See Ross,
32 S.W.3d at 857 (When a trial court’s ruling can be understood as resting on
disbelief of a fact witness or an erroneous legal conclusion, the reviewing
court will not presume legal error.).[2]  

            This
case differs from State v. Gray, 157 S.W.3d 1 (Tex. App.–Tyler
2004), aff’d, 158 S.W.3d 465 (Tex. Crim. App. 2005), in which we
reversed a trial court’s order suppressing evidence.  In that case, the trial court made a factual
finding that the defendant had violated the law in the officer’s presence.  See Gray, 157 S.W.3d at 7.  The trial court nevertheless concluded that
the evidence should be suppressed because there was no reason to detain the
defendant.  Id.  We reversed because the trial court made a
legal conclusion that was erroneous in light of a factual finding it had made—specifically,
that there was no justification for the detention despite finding facts to be
true that would support a brief detention. 

            This
case is different because the trial court did not find facts to be true that
would have supported an investigatory detention.  The trial court did not find that an offense
had been committed in the officer’s presence, as in Gray, and did
not state that it found the Snyder report to be worthy of belief.  Viewing the evidence in a light most
favorable to the trial court’s ruling and deferring to the trial court’s
determination of the facts, we cannot conclude that the trial court erred when
it found that the frisk and detention were without legal justification.  We overrule the State’s first issue.

            II.
Arrest

            In
its second issue, the State argues that the trial court erred when it found
that Appellee had been arrested. 
Specifically, the trial court found as a matter of law that the “handcuffing
of defendant constituted an illegal warrantless arrest of defendant.”  As a matter of fact, the trial court found
that there was not reasonable suspicion to justify placing Appellee in
handcuffs.  

            The
State does not argue that an arrest would have been legal.  Rather, the State argues that Appellee was
not arrested, but that he was simply detained. 
The State is correct that just because Appellee was handcuffed does not
mean that he was arrested.  See  Swain v. State, 181 S.W.3d 359,
366 (Tex. Crim. App. 2005) (citing Balentine v. State, 71 S.W.3d
763, 771 (Tex. Crim. App. 2002)).  A
person is under arrest if a reasonable person would have believed that he was
not free to leave under the circumstances surrounding the incident.  Swain, 181 S.W.3d at 366.  By statute, an arrest is defined as having
occurred when a person has been actually placed under restraint or taken into
custody by an officer or person executing a warrant of arrest, or by an officer
or person arresting without a warrant.  Tex. Code Crim. Proc. Ann. art. 15.22
(Vernon 2006).  The officer’s belief or
statement as to whether the person is under arrest is one factor in the
analysis but is not determinative.  See
Rhodes v. State, 945 S.W.2d 115, 117 (Tex. Crim. App. 1997).  

            The
trial court found that the handcuffing was illegal either as a detention
supported by reasonable suspicion or as an arrest.  Therefore, the trial court’s characterization
of the detention is not the most important part of the inquiry.  No drug evidence was gained from the initial
detention.  The import of the trial court’s
ruling is that the detention was illegal, not that the detention was an arrest.

            That
said, we cannot conclude that the trial court erred.  Pursuant to Swain, a
mechanistic conclusion that placing the handcuffs on Appellee was an arrest
would be in error.  But the trial court
did not do that.  Giving due deference to
the factual determinations made by the trial court, we cannot conclude that the
trial court erred when it determined that the deputy arrested Appellee.  The deputy walked to Appellee’s front door
and placed the man in handcuffs.  A
reasonable person could conclude that he was not free to leave at that
point.  We overrule the State’s second
issue.

            III.
Initial Walk Through of Home

            In
its third issue, the State argues that the trial court erred when it concluded
that the walk through of Appellee’s home was illegal.  The State advances two arguments to justify
this warrantless search.  The first argument
is that it was a protective sweep permitted by Reasor, 12 S.W.3d
at 816–17.  In  Reasor, the court of criminal
appeals adopted a rule from Maryland v. Buie, 494 U.S. 325, 108
L. Ed. 2d 276, 110 S. Ct. 1093 (1990), that allowed a sweep of a residence pursuant
to an in–home arrest when the officer possesses an “objectively reasonable
belief, based on specific and articulable facts, that a person in that area
poses a danger to that police officer or to other people in the area.”  Reasor, 12 S.W.3d at 817; see
also Beaver v. State, 942 S.W.2d 626, 629–30 (Tex. App.–Tyler 1996,
pet. ref’d).  

            This
doctrine does not cover the walk through in this case.  The trial court found that there was not
reasonable suspicion for the officer to search Appellee’s person or detain
him.  There are no facts to suggest that
the home was more dangerous than Appellee himself.  The trial court’s conclusion that there were
not grounds to support a frisk of Appellee’s person or his detention logically
carries over, in these circumstances, to mean that there was no suspicion to
justify a “frisk” of the residence.

            The
second justification is an emergency entry to protect the life of another.  Under the emergency doctrine exception,
police officers are not barred from making warrantless entries and searches
when they reasonably believe that a person within is in need of immediate
aid.  See Mincey v. Arizona,
437 U.S. 385, 392, 98 S. Ct. 2408, 2413, 57 L. Ed. 2d 290 (1978); Laney
v. State, 117 S.W.3d 854, 861 (Tex. Crim. App. 2003) (exception applies
if officer has immediate, reasonable belief of need to protect or preserve life
or avoid serious injury).  The trial
court found that there was not probable cause for the original entry into the
home.  But that does not answer the
question presented.  Probable cause is
necessary for certain things, obtaining a search warrant for example, but not
for a sweep pursuant to the emergency doctrine. 


            The
trial court’s findings do not directly address whether the trial court found a
reasonable basis for the walk through pursuant to the emergency doctrine.  However, the trial court’s finding that the
frisk and initial detention were illegal is sufficient for us to infer a
finding that the emergency sweep was unreasonable.  The basis for the initial detention and the
emergency sweep came from the same source, the deputy’s conversation with
Snyder.  In the absence of specific
findings to the contrary, we cannot conclude that the trial court did not
credit that predicate for the initial detention and search of Appellee, but did
credit it with respect to an emergency sweep. 
See Swain, 181 S.W.3d at 365 n.7 (Implicit facts
that support the ruling may be inferred when the written findings of fact did
not cover every contested matter.).  Said
another way, if the trial court did not credit Snyder’s second hand report that
he had been assaulted and did not believe that concern for the officer’s safety
allowed a frisk, it is unlikely that the court believed there was a basis to
conclude that another person was in danger or that some other threat from the
trailer presented a danger.  Therefore,
the trial court’s conclusion that the walk through was unreasonable has a
factual basis in the record and was not error. 
We overrule the State’s third issue.

            IV.
Consent to Search

            In
its fourth and fifth issues, the State argues that the trial court erred when
it concluded that the search was the product of an illegal custodial
interrogation and that the consent was tainted by the illegal arrest of
Appellee.  We addressed the custodial
interrogation issue above.  The trial
court erred when it concluded that the consent was invalid because it was the
product of a custodial interrogation.  We
sustain the State’s fourth issue. 

            The
trial court also found, independently, that the illegal arrest or detention of
Appellee tainted the consent, rendering it a nullity.  See Wong Sun v. United States,
371 U.S. 471, 488, 83 S. Ct. 407, 417, 9 L. Ed. 2d 441 (1963) (When evidence
results from illegal actions of police, issue is “whether, granting
establishment of the primary illegality, the evidence to which instant
objection is made has been come at by exploitation of that illegality or
instead by means sufficiently distinguishable to be purged of the primary
taint.”).  Generally, any consent
obtained pursuant to an illegal detention is tainted by the illegality unless
the passage of time or other factors had attenuated the taint.  See State v. Bagby, 119
S.W.3d 446, 452 (Tex. App.–Tyler 2003, no pet.) (citing Brick v. State,
738 S.W.2d 676, 677 (Tex. Crim. App. 1987)). 
In  Brick, the court
of criminal appeals listed several factors to be used to evaluate attenuation:
(1) the proximity of the consent to the arrest, (2) whether the seizure brought
about observation of the particular object for which they sought consent to
search, or, in other words, whether the illegal detention allowed officers to
view the area or contraband that the officers later received consent to search,
(3) whether the illegal seizure was flagrant police misconduct, (4) whether the
consent was volunteered rather than requested by the detaining officers, (5)
whether the detainee was made fully aware of the fact that he could decline to
consent and, thus, prevent an immediate search, and (6) whether the police
purpose underlying the illegality was to obtain the consent.  See Brick, 738 S.W.2d at
680-81. 

            In
this case, the trial court found that there was inadequate proof that the taint
of the illegal arrest had attenuated before the consent to search was
given.  There are  Brick factors that favor each
side.  The consent was obtained in close
proximity to the illegal arrest.  This
factor weighs in favor of Appellee.  See
Bagby, 119 S.W.3d at 453.  The
arrest and the sweep of the residence allowed the officer to view the
contraband in the area later searched. 
This second factor weighs in favor of Appellee.  The illegal seizure was not flagrant police
misconduct.  It is true that the trial
court found that the officer illegally arrested Appellee and illegally walked
through his home, but the actions were undertaken on what the officer believed
was a reasonable basis and were not particularly egregious.  This factor weighs neutrally.  The consent was not volunteered and,
therefore, this factor weighs in favor of Appellee.  

            The
written consent form stated that Appellee could refuse to consent to a
search.  This factor weighs in favor of
the State.  Finally, there is no evidence
that the police conducted the arrest and sweep to coerce Appellee into
consenting to a search.  This factor
weighs in favor of the State.           In Reasor, the court of
criminal appeals considered an analogous case where there had been an illegal
protective sweep of a residence and the arrestee had been handcuffed.  The court found that the taint of the illegal
conduct did not invalidate the subsequently obtained consent to search because
the police did not discover anything during the sweep, the suspect was advised
of his Miranda rights prior to giving consent, and the suspect
assisted the police in finding the contraband. 
Reasor, 12 S.W.3d at 818–19.  Although it principally addressed arguments
about the related question of voluntariness,[3] the court of criminal
appeals concluded that the taint from the illegal sweep had attenuated to the
point that the defendant could give effective consent.  Here the facts and the procedural history are
almost directly the opposite of those presented in Reasor.  The trial court decision in this matter is in
favor of Appellee, the suspect, the sweep revealed illegal contraband, there
were no Miranda warnings, and Appellee did not affirmatively
assist the police.

            After
a showing of a causal connection between the illegality and the consent, the
burden is on the State to show by clear and convincing evidence that “the taint
otherwise inherent in the illegality of the arrest has dissipated.”  See Brick, 738 S.W.2d at 681; see
also Pham v. State, 175 S.W.3d 767, 774 (Tex. Crim. App.
2005).  The related question of whether
the state has proven that consent to search was voluntarily given is a question
of fact.  See Miller v. State,
736 S.W.2d 643, 649 (Tex. Crim. App. 1987). 
Likewise, we perceive the question as to whether the taint of an illegal
arrest or detention has attenuated to be a question of fact or a mixed question
of fact and law.  See id.
(quoting Brown v. Illinois, 422 U.S. 590, 95 S. Ct. 2254, 2261,
45 L. Ed. 2d 416 (1975) (“The question whether a confession is the product of a
free will under Wong Sun must be answered on the facts of each
case.”)).  As such, the trial court’s
factual determination that the taint had not attenuated is entitled to
deference.  See, e.g., Wiede
v. State, 214 S.W.3d at 24–25. 

            As
with the question of the legality of the initial search of the premises and
seizure of Appellee, reasonable minds could come to different legal conclusions
based on differing interpretations of the facts.  Given the standard of proof and the deference
we must show, we conclude that the trial court’s finding that the State did not
show attenuation is not reversible error. 
We overrule the State’s fifth issue. 

Disposition

We affirm the order of
the trial court. 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

Opinion delivered April 30, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

(DO NOT PUBLISH)











[1] Miranda v. Arizona, 384 U.S.
436, 444, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966).

 





[2] During a discussion with counsel prior to
issuing a ruling the trial court said, “I’m having a problem with your officer’s
safety issue.”





[3] See Brick, 738 S.W.2d at 680 (“While
once it is found voluntary, consent to search will certainly dispel the illegality
of a subsequent warrantless search, the voluntariness determination alone does
not fully account for the misfeasance of the police in having conducted an
illegal arrest and thereby obtaining that consent.”).