Affirmed and Opinion filed January
27, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00992-CR



Randy Farrel
Kelly, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 182nd District Court

Harris County, Texas

Trial Court
Cause No. 1186858



 

OPINION 

Appellant Randy Farrel Kelly appeals his conviction
for possession of methamphetamine with intent to deliver, claiming that the
trial court erred in denying his motion to suppress.  We affirm.

Factual and Procedural
Background

Appellant was charged by indictment with the felony
offense of possession of a controlled substance, methamphetamine weighing
between four and two hundred grams, with intent to deliver.  The primary
offense was enhanced by two prior felony convictions.  

Appellant filed a motion to suppress evidence he
claimed was illegally obtained and any statements he made during his detention. 
At a hearing on the motion, the parties stipulated that officers searched appellant’s
vehicle during a traffic stop without a warrant.  When viewed in the light most
favorable to the trial court’s ruling,[1]
the evidence from the hearing reflects the following:

Deputies with the Harris County Sherriff’s Office
were conducting surveillance as part of a narcotics investigation that focused
on appellant.  The deputies believed appellant’s red pick-up truck was parked
at a nearby residence and that appellant was in possession of methamphetamine. 
One deputy sat in a marked patrol unit that was stopped along a roadway when he
saw a vehicle matching the description of appellant’s vehicle traveling toward
him.  He observed that the vehicle had no front license plate and that the
occupant inside wore no seat belt.  He radioed the other deputies assisting in
the investigation about the traffic violations that he observed.  As the
vehicle turned left, the deputy observed the vehicle’s rear license plate and
conducted a computer search of the vehicle’s registration.  He learned that
appellant was the registered owner and informed other officers by radio of the
license-plate number.

Deputy Shattuck learned of the traffic offenses via
radio, observed the same vehicle approaching him, and also noticed the vehicle
had no front license plate and that the driver wore no seat belt.  Deputy
Shattuck pursued and stopped the vehicle at a nearby service station.  Deputy
Shattuck observed the driver reaching around inside the truck as if reaching
toward the passenger side.  Based on his training and experience, Deputy
Shattuck believed that such movements are indicative of an occupant attempting
to conceal or retrieve items.  

Deputy Shattuck approached the vehicle and asked the
driver for his driver’s license.  Deputy Shattuck noticed that the driver
seemed nervous and that his hands shook when he produced his identification. 
Deputy Shattuck saw that the driver continued to look through his wallet after
producing his driver’s license, as if looking for something else.  When the
deputy learned appellant’s identity, he asked appellant to exit the vehicle and
asked appellant a few questions.  Appellant told the deputy that he had been
visiting a friend’s home in the neighborhood.  Around this time, other officers
arrived on the scene.  Deputy Shattuck conducted a computer check of
appellant’s driver’s license and discovered appellant had a criminal history
involving narcotics, but no outstanding warrants. 

Deputy Shattuck testified that he developed suspicion
about whether appellant possessed any contraband or weapons based on
information gathered before the traffic stop, appellant’s furtive movements
inside the vehicle, and appellant’s nervous demeanor.  In response to the
deputy’s questions, appellant denied possessing narcotics or other contraband. 
When Deputy Shattuck asked appellant for consent to search the vehicle,
appellant stated, “Sure.  I don’t have anything in there.”  After obtaining
consent, Deputy Shattuck asked appellant to have a seat in the back of a patrol
unit, citing safety reasons.  Appellant agreed and voluntarily walked to the
patrol unit, opened the door, and sat in the backseat of the patrol unit with the
windows rolled down because of the warm weather.  According to the deputies’
testimony, appellant was not handcuffed or under arrest at this time.

Deputy Shattuck and two other officers searched
appellant’s vehicle and discovered several plastic bags containing a substance
that was later determined to be “crystal meth” and a plastic bag containing a
“cutting agent” inside a false bottom of a cup that was located in the truck’s
center floor console.  One deputy informed appellant about finding the
narcotics, and appellant indicated that the substance belonged to him.  When the
deputy asked appellant if there were any more narcotics in the vehicle,
appellant told the deputy that there were two more plastic bags of
methamphetamine behind the bristles of a hairbrush.  The deputy testified that
his investigation was still ongoing and that appellant was not handcuffed,
informed of his rights, or arrested at the time the deputy learned of the
narcotics in the hairbrush.  The deputies located the narcotics in a hairbrush
that was partially hidden between the driver’s seat and the passenger’s seat. 
The deputies then handcuffed appellant and placed him under arrest.

Appellant testified at the hearing and acknowledged
that his vehicle had no front license plate at the time he was pulled over;
however, he claimed to have been wearing a seat belt at the time of the stop. 
According to appellant, when asked for his consent to search the vehicle, appellant
asked whether he had a choice, to which the deputy replied, “Not really.”  Appellant
testified that he then stated, “Well, you know, I can’t stop you, you know.”  On
cross-examination, appellant admitted that he did not expressly say “no” when
he was asked for consent.  Appellant testified that he did not tell the
deputies to stop searching his vehicle.  Appellant claimed that during the
search he was handcuffed and placed in the back of the patrol unit; appellant
stated that he believed he was not free to leave at the time.

The trial court denied appellant’s motion, finding
that appellant was stopped pursuant to a legitimate traffic stop for having no
front license plate and that the length of the detention was reasonable.  The
trial court found that appellant knowingly and voluntarily gave the deputies
consent to search his vehicle, which applied to all of the narcotics found as a
result of the search.  The trial court deemed that appellant was in a custodial
situation after the deputies discovered the narcotics inside the cup, and that
appellant was being interrogated, was not free to leave, and was placed under
arrest.  The trial court found that “[t]hough I don’t think that has any affect
[sic] at all on them ultimately finding the second set of drugs, I do think it
has bearing on whether or not that statement ultimately would have been
admissible.”

Appellant entered a plea of “guilty” and judicially
confessed to committing the charged offense.  Appellant entered a plea of
“true” to the two enhancement paragraphs.  After finding appellant guilty of
the charged offense and finding the enhancement paragraphs to be true, the
trial court sentenced appellant to twenty-five years’ confinement.

Issues and Analysis

Appellant, in three issues, challenges the trial
court’s denial of his pre-trial motion to suppress.  We review a trial court’s
ruling on a motion to suppress evidence under a bifurcated standard of review. 
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  At a
suppression hearing, the trial court is the sole finder of fact and is free to
believe or disbelieve any or all of the evidence presented.  Wiede v. State,
214 S.W.3d 17, 24 (Tex. Crim. App. 2007).  We give almost total deference to
the trial court’s determination of historical facts that depend on credibility
and demeanor, but review de novo the trial court’s application of the law to
the facts as resolution of those ultimate questions does not turn on the
evaluation of credibility and demeanor.  See Guzman, 955 S.W.2d at 89. 
When, as in this case, there are no written findings of fact in the record, we
uphold the ruling on any theory of law applicable to the case and presume the
trial court made implicit findings of fact in support of its ruling so long as
those findings are supported by the record.  State v. Ross, 32 S.W.3d
853, 855–56 (Tex. Crim. App. 2000).  We view a trial court’s ruling on a motion
to suppress in the light most favorable to the trial court’s ruling.  Wiede,
214 S.W.3d at 24.  If supported by the record, a trial court’s ruling on a
motion to suppress will not be overturned.  Mount v. State, 217 S.W.3d
716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

Did the State prove by clear and convincing evidence
that appellant consented to a search of his vehicle?

In his first issue, appellant asserts the State
failed to meet its burden of proving by clear and convincing evidence that
appellant consented to the officers’ search of his vehicle.

Warrantless searches are “per se unreasonable,”
unless they fall under one of a few specific exceptions.  Rayford v. State,
125 S.W.3d 521, 528 (Tex. Crim. App. 2003) (citing Schneckloth v. Bustamonte,
412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)); Reasor v. State,
12 S.W.3d 813, 817 (Tex. Crim. App. 2000).  Consent to search is one of the
well-established exceptions to the constitutional requirements that a police
officer have both a warrant and probable cause before conducting a search.  Schneckloth
v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). 
Texas law requires the State to prove voluntariness of consent to search by
clear and convincing evidence, rather than by a mere preponderance of the
evidence.  Reasor, 12 S.W.3d at 817.  To be valid, consent to search
must be positive and unequivocal and must not be the product of duress or
coercion, either express or implied.  Id. at 818.  Consent to search is
not shown by acquiescence to a claim of lawful authority.  Allridge v. State,
850 S.W.2d 471, 492–93 (Tex. Crim. App. 1991). 

The trial court must look at the totality of the
circumstances surrounding the statement of consent to determine whether consent
was given voluntarily.  Id.  A showing that a suspect has been warned
that he does not have to consent to the search and has a right to refuse is of
evidentiary value in determining whether a valid consent was given.  See
Johnson v. State, 68 S.W.3d 644, 653 (Tex. Crim. App. 2002).  But the
absence of such information does not automatically render an accused’s consent
involuntary.  Id.  Other facts for consideration include the accused’s
age, education, and intelligence, the constitutional advice given to the
accused, the length of detention, the repetitive nature of questioning, and the
use of physical punishment.  See Reasor, 12 S.W.3d at 818.  An officer’s
testimony that consent was voluntarily given can be sufficient evidence to
prove the voluntariness of the consent.  See Martinez v. State, 17
S.W.3d 677, 683 (Tex. Crim. App. 2000).

In considering the totality of the circumstances, the
record shows that clear and convincing evidence supports the trial court’s
finding that during the traffic stop appellant voluntarily consented to the search.
 See Reasor, 12 S.W.3d at 818.  Deputy Shattuck testified that appellant
stated, “Sure. I don’t have anything in there,” in response to his request for
consent.  The circumstances do not suggest that appellant’s consent was the
product of duress or coercion or was otherwise involuntary.  See id. (considering
whether accused was handcuffed, arrested, or held at gunpoint in determination
of whether the accused consented to a search).  Appellant argues that Deputy
Shattuck’s testimony about appellant’s consent does not really “ring true” and
that appellant’s own testimony about not consenting sounded “like a more
realistic exchange.”  Appellant refers to his age of fifty-six years and his having
been in a penitentiary four times for convictions dealing with methamphetamine,
for support that he would not have allowed officers to search his vehicle if he
had been given a choice.  But, as sole judge of the witnesses’ credibility at
the suppression hearing, the trial court could have decided to believe the
officers’ testimony and disbelieve appellant.  See Wiede, 214 S.W.3d at
24.  

Appellant also points to the following circumstances to
support his assertion that any consent was not positive and unequivocal:

·       
The officers were involved in an operation solely dedicated to
stop and search appellant, an objective that the officers successfully
attained.

·       
Deputy Shattuck did not use the consent forms that were in his
possession, citing less expectation of privacy of a vehicle.

·       
Only one of the three officers on the scene, Deputy Shattuck,
heard appellant give consent.

·       
The prosecutor’s use of the term “acquiesce” when arguing that
appellant consented to the search implies that appellant passively consented as
opposed to offering positive and unequivocal consent.[2]

Appellant, however, provides
no citation to legal authority or argument in support of how these
circumstances affect a determination of whether he gave consent.  Tex. R. App. P. 38.1(i).  Nor does
appellant show that the record lacks clear and convincing evidence to support
the trial court’s determination that consent was voluntary.

Viewing the record and all reasonable inferences in
the light most favorable to the trial court’s ruling, we conclude the record
supports a determination that appellant voluntarily consented to the deputies’
search of his vehicle.  See Reasor, 12 S.W.3d at 818.  We overrule
appellant’s first issue.

Were the officers
justified in detaining appellant?

In his second issue, appellant asserts that the deputy’s
reason for stopping appellant was “so pretextual as to render it a sham so that
no amount of time spent on it is reasonable.”  According to appellant, the
officers abandoned the traffic investigation almost immediately after stopping
him, and any further detention was unreasonable.

To establish grounds for the suppression of evidence
for alleged violations under the Fourth Amendment, a defendant bears an initial
burden to produce evidence that rebuts the presumption of proper police
conduct.  Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). 
This burden may be satisfied upon a showing that a search or seizure occurred
without a warrant.  Id.  The burden then shifts to the State to
establish that the search or seizure was conducted pursuant to a warrant or was
reasonable.  Id.  The parties in this case stipulated that the deputies
did not have a warrant; therefore, the State bore the burden of establishing
the reasonableness of the warrantless detention.  See id.

Appellant argues that the initial stop was pretextual
and that the officers abandoned the purpose of the stop for the traffic
offenses immediately without justification to conduct a narcotics
investigation.  An objectively valid traffic stop is not unlawful just because
the detaining officer has some ulterior motive for making the stop.  Crittenden
v. State, 899 S.W.2d 668, 674 (Tex. Crim. App. 1995).  An officer
may stop and detain a person if the officer has reasonable suspicion that a
traffic violation was in progress or had been committed.  McVickers v. State,
874 S.W.2d 662, 664 (Tex. Crim. App. 1993); see Valencia v. State, 820
S.W.2d 397, 400 (Tex. App.—Houston [1st Dist.] 2008, pet. ref’d).  The Texas
Transportation Code provides that a person commits an offense if the person
operates a motor vehicle on a public highway without a front license plate.  See
Tex. Transp. Code Ann. §
502.404(a) (West 2007).  As reflected in the record, it is undisputed that
appellant’s vehicle had no front license plate.  Therefore, Deputy Shattuck had
reasonable suspicion to stop appellant for the traffic violation and conduct an
investigation of the traffic-law infraction.  See McVickers, 874 S.W.2d
at 664.

A routine traffic stop is a detention and must be
reasonable.  Davis v. State, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997).
 The general rule is that an investigative stop can last no longer than
necessary to effectuate the purpose of the stop.  Kothe v. State, 152
S.W.3d 54, 63 (Tex. Crim. App. 2004).  During a traffic stop, law-enforcement
officers may request information such as a driver’s license and vehicle
registration, and may conduct a computer check of that information.  See
id.  After the computer check is completed, and the officer learns that the
driver has a valid license and no outstanding warrants and that the vehicle is
not stolen, the traffic stop investigation is fully resolved.  See id. at
63–64.  There are no rigid time limitations on these detentions.  See Kothe,
152 S.W.3d at 64.  But, once the reason for the stop has been satisfied, the
stop may not be used as a “fishing expedition” for unrelated criminal
activity.  See Davis, 947 S.W.2d at 243.  Once an investigation
of a traffic violation is concluded, an officer may no longer lawfully detain a
driver unless there is reasonable suspicion to believe another offense has been
or is being committed.  See Davis, 947 S.W.2d at 245.  In determining
whether the detention of appellant was reasonable, we consider whether the
officer diligently pursued a means of investigation that was likely to confirm
or dispel his suspicions quickly, during the time necessary to detain the
driver.  See Kothe, 152 S.W.3d at 64.  

Appellant asserts that any suspicion Deputy Shattuck
developed regarding appellant’s possession of narcotics was based on
information he learned in the narcotics investigation prior to the traffic
stop.  Deputy Shattuck testified that his suspicion was aroused in part by
information gleaned from the narcotics investigation before the stop, but also
by appellant’s furtive movements inside the vehicle and appellant’s nervousness
after he was stopped.  A person’s nervous behavior and furtive movements may
constitute factors in determining reasonable suspicion.  See Lippert v. State,
664 S.W.2d 712, 721 (Tex. Crim. App. 1984) (holding that no justification for
detention existed when the accused made no furtive gestures or sudden
movements); LeBlanc v. State, 138 S.W.3d 603, 608 n.5 (Tex. App.—Houston
[1st Dist.] 2004, no pet.) (providing that furtive movements during a police
stop may be a factor giving rise to reasonable suspicion); Simpon v. State,
29 S.W.3d 324, 329 (Tex. App.—Houston [14th Dist.] 2000, pet. ref’d)
(indicating that nervous behavior, among other things, may give rise to
reasonable suspicion).

Asking questions, including asking for consent to
search a vehicle, during a valid traffic stop is not a separate detention.  See
Levi v. State, 147 S.W.3d 541, 544 (Tex. App.—Waco 2005, pet. ref’d).  In
this case, Deputy Shattuck asked appellant for his driver’s license and
questioned him about his whereabouts, which is standard procedure for any
traffic stop.  See State v. Cardenas, 36 S.W.3d 243, 246 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d) (providing that an officer may ask
about a driver’s destination and purpose of travel during a valid detention).  Because
Deputy Shattuck’s suspicions were aroused, in part, by appellant’s furtive
movements inside the vehicle and appellant’s nervousness after being stopped, Deputy
Shattuck’s questioning about whether appellant possessed narcotics was
reasonably related to the traffic stop investigation.  See id.  The
questioning was related to matters within the scope of the traffic stop,
especially given the fact that Deputy Shattuck learned of appellant’s criminal
background involving narcotics and asked appellant about this information; the
stop was not completed when the officer obtained appellant’s consent to search
the vehicle.  See Magana v. State, 177 S.W.3d 670, 674 (Tex.
App.—Houston [1st Dist.] 2005, no pet.); Freeman v. State, 62 S.W.3d
883, 888 (Tex. App.—Texarkana 2001, pet. ref’d).  During this lawful traffic
stop, appellant gave valid consent to search the vehicle.  See Magana,
177 S.W.3d at 673–74.  The traffic investigation was not unduly prolonged to
obtain consent because the deputy quickly sought consent to search, and appellant
readily consented when asked.[3] 
See id.  Any further detention was to effectuate the search pursuant to
appellant’s valid consent and needed no other justification.  See id.  

As evidence that the officers abandoned the traffic
investigation in lieu of a narcotics investigation, appellant points out that
he did not receive a written traffic citation, Deputy Shattuck did not ask for
proof of insurance as part of the traffic stop, and Deputy Shattuck did not
discuss the traffic violations with him.  Deputy Shattuck could not recall
asking for appellant’s insurance card and testified that he informed appellant
why he stopped appellant’s vehicle.  Although the trial court was free to
consider the failure to issue a written citation in determining credibility of
witness testimony, this evidence does not mean the officers lacked reasonable
suspicion as a matter of law.  See Overshown v. State, — S.W.3d —, —,
No. 14-09-00490-CR, 2010 WL 4880530, *3 (Tex. App.—Houston [14th Dist.] Dec. 2,
2010, no pet. h.).  Rather, this was evidence for the factfinder to consider
and weigh in making its factual determinations.

Additionally, appellant asserts that assuming arguendo
that he gave consent, once the officers abandoned the investigation for the
traffic violation and instead pursued a narcotics investigation, appellant’s
detention before he consented to a search was unreasonable.  But, we already
have determined that the detention was supported by reasonable suspicion for
the traffic infraction.  When, as in this case, consent to search is obtained
during the scope of a lawful detention, the consent is valid.  See Cardenas,
36 S.W.3d at 247.  We overrule appellant’s second issue.

Did the trial court err in refusing to suppress evidence
of the additional narcotics found in the vehicle under article 38.23 of the
Texas Code of Criminal Procedure?

In a third issue, appellant argues that trial court
should have suppressed evidence of the narcotics found inside the hairbrush
because they were found as a result of appellant’s response during the
officers’ custodial interrogation of appellant when he had not been advised of
his Miranda rights.[4] 
Appellant claims, “The trial court, however, held that, even though appellant
was not advised of his rights under Miranda v. Arizona […] prior to this
second round of questioning, it did not have ‘any affect at all on them
ultimately finding the second set of drugs.’”  Appellant has not cited, and an
independent review of the record does not show that, the trial court made any findings
regarding appellant’s Miranda rights.  The trial court made the
following findings as relevant to this issue:

[TRIAL COURT]:  . .
. And based on the testimony in large part specifically of the defendant, the
Court will find that the consent that was given was knowing and voluntary.  I
think the consent was valid.  And, so, I’m not going to suppress any of the
contraband that was found inside the car.  And I think that the consent being
found valid will suffice for the recovery of all of the contraband that was
found.

But I will make the
following finding:  With regard to the conversation that was made a little bit
later, after the finding of the first piece of—I think it was cocaine, or
whatever it was—the substance, the police officer went back to have a
conversation with the defendant, showing him what had been found.  I believe at
that point in time the detention did turn into a custodial situation, the
defendant was not free to leave.  They found what they believed to be
contraband.  I believe at that point in time the defendant, in fact, was placed
under arrest.

. . .

At the time that the—I
believe it was Officer Savell walked up to him and showed him what had been
found and asked, I think, something to the effect of, “Is there anything else
that you want to tell me about?”

Though I don’t
think that has any affect [sic] at all on them ultimately finding the second
set of drugs, I do think that it has a bearing on whether or not that statement
ultimately would have been admissible.[5]
 So I believe he was in custody at that time and was being interrogated. 
And it would appear at first glance, he would be entitled to all of the 38.22
rules to comply.  However, I think there’s an exception under [38.22(3)(c)]
that would allow that statement to be admissible anyway.

Appellant claims that the trial court improperly
relied upon Texas Code of Criminal Procedure article 38.22(3)(c) in admitting
the evidence of the narcotics found in the hairbrush.  As reflected in the
trial court’s express findings set forth above and contrary to appellant’s
assertion, under this provision, referred to as the exclusionary rule, the
trial court admitted appellant’s statement made to the deputies during
custodial interrogation, but did not rely upon this provision to admit evidence
of the narcotics found in the hairbrush.  Appellant’s arguments in this regard
lack merit.

In contending that article 38.22(3)(c) did not apply
to the narcotics, appellant asserts that the “second batch of methamphetamine
was found as a result in violation of his rights under Miranda.”  To the
extent appellant claims that the narcotics within the hairbrush should have
been suppressed under article 38.23 of the Texas Code of Criminal Procedure, he
has provided no argument, citation, analysis, or legal authority in support of
this assertion.  To present an issue for appellate review “the brief must
contain a clear and concise argument for the contentions made, with appropriate
citations to authorities and to the record.”  Tex.
R. App. P. 38.1(i).  Appellant has not presented a single argument or
citation in support of this issue or addressed any of the governing legal
principles or applied them to the facts of this case.  See King v. State,
17 S.W.3d 7, 23 (Tex. App.—Houston [14th Dist.] 2000, pet. ref=d).  Although appellant’s
brief contains a sentence claiming that the narcotics in the hairbrush should
have been excluded under article 38.23, conclusory statements which contain no
citation to authority present nothing for appellate review.  Id.; see
also Vuong v. State, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992).  We overrule appellant’s third issue.

Conclusion

The trial court did not abuse its discretion in
denying appellant’s motion to suppress.  The State met its burden of proving by
clear and convincing evidence that appellant consented to the officers’ search
of his vehicle after a legitimate traffic stop.  The officers were justified in
detaining appellant after the initial stop to effectuate the search based on
appellant’s valid consent.

The trial court’s
judgment is affirmed.

 

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson,
Frost, and Brown.

Publish — Tex. R. App. P. 47.2(b).









[1]
See Baldwin v. State, 278 S.W.3d 367, 369 (Tex. Crim. App. 2009).





[2]
Appellant refers to this factor as an “observation” and acknowledges that the
prosecutor’s argument is not evidence.





[3]
On this basis, appellant’s reliance on Herrera v. State, 80 S.W.3d 283
(Tex. App.—Texarkana 2002, pet. ref’d), is factually distinguishable because in
the case under review, Deputy Shattuck did not detain appellant for any length
of time to wait for a second officer, as occurred in Herrera.  See id. at
289 (involving prolonged detention while a Spanish-speaking officer arrived on
scene).  Furthermore, as in this case, an officer may request consent to search
during a lawful traffic stop.  See Magana, 177 S.W.3d at 673–74 (disagreeing with holding in Herrera on
these grounds).  





[4]
Appellant does not contest the admissibility of his statement to the deputies
indicating the location of the narcotics; rather, he challenges the
admissibility of the narcotics found in the hairbrush.





[5]
Emphasis added.